No. 21,462.

JOHN C. TAYLOR and ADELIA A. TAYLOR, by their Next Friend, ALICE TAYLOR, and CHARLES. ROSS TAYLOR, by his Next Friend, ANNA ROSS, *Appellees*, v. THE FARMERS & BANKERS LIFE INSURANCE COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Payment of Premium Note Assumed by Company's Agent—Note in Default—Policy Did Not Lapse.* The defendant insurance company, on receipt from an agent of an application for a policy and a note for the first year's premium, returned the note with a policy to the agent, stating that it had been unable to get satisfactory references on the note.

   "However, we are enclosing this policy herewith, although you understand of course that the collateral which we hold, will not, in view of the references which we have, guarantee the payment of this premium, and the delivering of this policy under the circumstances to the insured will be at your own risk."

   The agent to whose order the note was made payable, deeming the note good, delivered the policy. · *Held*, that this left the company in the attitude of relying on the agent as the ultimate paymaster, and it cannot defeat an action on the policy because the insured did not pay the note.

2. SAME—*Loose Use of Word "Collateral."* A loose use of the word "collateral" and a peculiar method of bookkeeping, held not to affect seriously or materially the real question involved.

3. TRIAL—*Evidence.* Certain rulings on evidence examined, and held not to be substantially prejudicial.

4. TRIAL—*Findings.* The refusal to set aside certain findings of fact was not error.

5. LIFE INSURANCE—*Judgment Modified.* The verdict and judgment being for more than the policy called for, the judgment is modified to conform to the terms of the policy, and thus modified the judgment is affirmed.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed April 6, 1918. Modified and affirmed.

*J. A. Brubacher*, of Wichita, *F. W. Sturges*, and *Fred W. Sturges, jr.*, both of Concordia, for the appellant.

*Park B. Pulsifer*, *Charles L. Hunt*, and *Clyde L. Short*, all of Concordia, for the appellees.

The opinion of the court was delivered by

WEST, J.: An agent of the defendant company took the application of Charles L. Taylor for a policy of insurance, the latter giving his note for the premium of the first year, payable to the order of the agent, in the sum of $163.28. The contract provided that failure to pay such note at maturity should avoid the policy and work a forfeiture of all previous payments, except as provided in the policy. The agent sent the application and note to the company and received acknowledgment of their receipt at the Salina office. Later he received a letter from the home office containing the following:

"We acknowledge receipt of note for $163.28 on this case. We will at once secure references on this note, and if good will forward you check for two-thirds of your commission as an advance on it, balance of commission to be paid upon payment of the note; if not good, we will advise you at once and await your instructions."

Later he received a letter containing the following:

"With reference to the policy of Charles L. Taylor, whose application you secured some time ago, will advise that we have been unable to get satisfactory references on this note. However, we are enclosing this policy herewith, although you understand of course that the collateral which we hold will not, in view of the references which we have, guarantee the payment of this premium, and the delivering of this policy under the circumstances to the insured will be at your own risk."

The agent, feeling that the applicant would meet the note, delivered the policy to him, and testified that he was willing to have the company charge up against him the net premium, which he was willing to pay whether the insured paid the note or not. The agent was charged with the net amount due the company. Shortly after the issuance of the policy the insured became insane, and later the company wrote the agent as follows:

"Pursuant to your request of the 24th inst., we enclose the C. L. Tay-

lor note ,for $163.28, endorsed with a credit of the unearned premium, $81.64. Policy No. 3234 lapsed on September 4, 1913."

The insured, shortly after receiving the policy, offered to turn over to the agent two horses in payment of the note, which he declined, and on another occasion offered to go to the bank and get the money and pay the note, but was told by the agent that it was unnecessary to do so. The agent testified that he understood the reference to delivering the policy at his own risk to mean that if he delivered the policy and the note was not paid he would have to pay the net to the company. Upon learning of the insanity of the insured the agent wrote to the company thereof, stating that the agent had not realized on the note and that it might be he could collect it now better than to let it go longer, or that he might get the policy returned, as the father-in-law had refused to pay for the reason that the beneficiary was not the wife of the insured. The company was requested to send the note so that the agent could push the collection or take up the policy. In reply the company forwarded the note, stating "upon collection of same we would request that you kindly forward remittance to cover to this office. I hope that you will either be able to collect it or take up the policy."

When he received the note back from the company it had indorsed thereon "$81.64 unearned premium," and a notation that the policy had lapsed. The agent testified that the Salina agent had asked permission of him to cancel the policy, stating that he would see that the nets charged against the agent would be credited back. It seems that on final settlement the agent paid one-half of the net, which was $24.49. The agent testified that he owned the note at the time of trial. It was offered to show by the treasurer that when the policy was issued the company looked to the insured for payment of the note, and in event of its nonpayment by him when due it looked to the agent for the payment of the earned net. On objection this offer was refused. Plaintiff's recovered and the defendant appeals.

In *Marshall v. Insurance Co.*, 98 Kan. 502, 159 Pac. 17, in an action against the same company, it was held that when a premium note is taken by the agent as such and delivered to

the company, and by an arrangement between them he is conditionally charged with the company's share of the premium, the charge to remain if the note is not paid, such note belongs to the company, and when the policy provides that it shall be void unless the note is paid at maturity the failure of the assured to pay the premium and note avoids the policy.

Certain admissions which characterized that case were held to show that credit was not independently extended to the applicant by the agent on his own responsibility.

The controlling question here is whether the company looked to the assured or to the agent for payment of the premium. Substantially all the facts covering this point have been already set forth. There are many others more or less dwelt upon in the briefs, which could be stated, but are not of enough materiality to warrant taking up space with them. It is plain that when the application and note had been received and the latter inquired about at the bank, the company returned both to the agent with directions that it was not satisfied with the note, and that if he desired to deliver the policy he could do so at his own risk. The only fair meaning to be placed on this direction is that if the premium were not paid the company would look to him for the portion thereof earned by it. Of course, it was natural and proper that upon learning that the policy had been delivered the company would hope and look for the payment of the note by the insured. But the real dependence of the company was upon the agent and not upon the applicant. Having seen fit to issue this policy and permit it to be delivered to the assured, looking to the agent for its, final source of remuneration, it was substantially in the attitude it would have been in had the agent or some friend purchased the policy for the insured and paid the year's premium therefor.

There was some loose use of the word collateral, there was some peculiar bookkeeping, and there were other matters which give ground for arguments and suggestions, but they are not of enough import to require discussion.

Rulings concerning the omission of evidence are complained of, and while a few of them might well have been different, we find nothing therein amounting to substantially prejudicial error.

Taylor v. Insurance Co.

The same may be said concerning instructions given and refused, those which were given being found upon examination to have fairly covered the legal questions involved.

In answer to special questions 3, 4, and 5, the jury said that the defendant.never received any money from the first annual premium, except that paid by the agent Swenson, and that that amount was $24.49. Complaint is made that the trial court did not set aside these findings for lack of evidence to support them, but, as already indicated, final settlement was made between the company and the agent for $24.49, which seems to be the only money received by the company for the policy.

One matter, however, requires attention. It was alleged in the petition that while the policy covered two one-thousand-dollar gold bonds it was agreed "that at the option of the said beneficiaries it would, instead of issuing said two bonds for $1,000 each, pay in cash upon the death of assured the sum of $1,500 for each bond, or the total sum of $3,000."

The answer contained a general denial. There was no such provision contained in the policy. The case seemed to have proceeded without the attention of the court being called to this matter until on the hearing of motion for new trial, or on motion for judgment on the verdict, although the court instructed the. jury if they found for the plaintiff to award $3,000 with interest, writing the amount in the verdict then submitted, with no exceptions taken to this instruction or this form of verdict. It is contended that in a circular issued by the company there was a statement to the effect that the redemption value of the bond at death was $1,500, or at the end of the first year $1,480. But it is admitted that this statement in the circular was not introduced in evidence.

While the matter should have been called to the court's attention earlier, failure to do so is not sufficient reason for requiring the company to go beyond the terms of its policy, which undertook to pay on each bond "$1,000 in gold coin of United States of America, or its equivalent, and . . . interest . . . at the rate of seven per cent."

Therefore, instead of a judgment for $3,000 and interest, there should be one for $2,000 and interest.

The cause is remanded with directions to enter judgment for $2,000 and interest, instead of $3,000 and interest, and as thus modified the judgment is affirmed.